LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

STACY TOLCHIN (217431)
*Stacy@Tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Attorneys for Plaintiff National Day Laborer Organizing Network

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL DAY LABORER ORGANIZING NETWORK,<br><br>*Plaintiff*,<br><br>v.<br><br>EXECUTIVE OFFICE OF IMMIGRATION REVIEW; U.S. DEPARTMENT OF JUSTICE,<br><br>*Defendants*. | Case No. 8:26-cv-100<br><br>**COMPLAINT** |

# INTRODUCTION

1. This is a Freedom of Information Action ("FOIA") case that seeks public transparency from the United States Department of Justice's ("DOJ") and its Executive Office of Immigration Review ("EOIR") regarding recent policies and practices related to issuance of bond decisions by Immigration Judges at the Adelanto, California Immigration Court.

2. The records requested include: (1) memorandum, directive, or other forms of communication EOIR issued to Adelanto Immigration Judges regarding issuance of bond decisions, and (2) bond redetermination orders issued by Adelanto, Immigration Judges.

3. Plaintiff the National Day Laborer Organizing Network ("NDLON") submitted its FOIA Request and sought these records on an expedited basis to ensure transparency into DOJ/EOIR's current policies and practices related to Immigration Judge bond decisions, and to hold the government to account for fair and just bond policies and practices.

4. Access to the requested records is of particular urgency in light of the surge of U.S. Immigration and Customs Enforce ("ICE") immigration enforcement actions in the greater Los Angeles area since June 2025. These heightened actions have resulted in large numbers of immigrants being detained at the Adelanto ICE Processing Center where they are subject to the jurisdiction of the Adelanto Immigration Court for any bond hearings. Information about EOIR's policies and practices regarding bond decisions are of critical importance to NDLON and its members, who seek to utilize the information to advocate for immigrants' fundamental rights, including the right to be free from detention.

# JURISDICTION AND VENUE

5. This Court has both subject matter jurisdiction over the FOIA claims asserted here and personal jurisdiction over the parties to this action pursuant to 5 U.S.C. § 552(a)(4)(B) and § 552(a)(6)(E)(iii).

6. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

7. Plaintiff National Day Laborer Organizing Network is a non-profit organization with federal 501(c)(3) status. Based in Los Angeles, NDLON improves the lives of day laborers, migrants and low-wage workers. NDLON provides support to detained immigrants arrested in Los Angeles and surrounding areas, many of whom are detained at the Adelanto ICE Processing Center. This support includes facilitating legal representation and fundraising to pay bond, which has become more difficult as bond amounts have significantly increased. NDLON will use the information obtained through these Requests to support community members most directly affected by the information. NDLON will also work with other non-profit and advocacy organizations to ensure that the information obtained through these Requests is distributed to community stakeholders and to the public at large. NDLON routinely creates and shares accessible community education materials with the nonprofit and legal service communities, as well as the general public, which are disseminated nationally through NDLON's websites ndlon.org, popedliberates.org and conocetusderechos.org, through NDLON's community radio program, *Radio Jornalera*, and newspaper *La Talacha*, and through various social media platforms and email listservs.

8. Defendant Executive Office of Immigration Review is a component of the Department of Justice and is an agency of the U.S. government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702. EOIR has an immigration court in Adelanto, California, and has possession, custody, and control of the records that NDLON seeks.

9. Defendant Department of Justice is an agency of the U.S. government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702. DOJ has offices in Adelanto, California, and has possession, custody, and control of the

records that NDLON seeks, including through its component Executive Office of Immigration Review.

## STATUTORY FRAMEWORK

10. The Freedom of Information Act, 5 U.S.C. § 552, mandates disclosure of records held by a federal agency in response to a request for such records by a member of the public, unless those records fall within one of nine narrow statutory exemptions.

11. The basic purpose of FOIA is to enable the public to hold the government accountable for its actions, through transparency and public scrutiny of governmental operations and activities. By providing access to government information, FOIA helps the public better understand the government, an essential component of a functioning democracy.

12. Any member of the public may make a request under FOIA for records to an agency of the United States. An agency that receives a FOIA request must notify the requestor within twenty business days after the receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). In its response, the agency must inform the requestor whether or not it intends to comply with the request, provide reasons for its determination, and inform the requestor of his or her right to appeal the determination. *Id*.

13. FOIA requires an agency to make an adequate search for responsive records that is "reasonably calculated to uncover all relevant documents." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 33 F.4th 1186, 1194 (9th Cir. 2022) (quoting *Hamdan v. Dep't of Just.,* 797 F.3d 759, 770 (9th Cir. 2015)). "[A]gencies must demonstrate adequacy … 'beyond a material doubt.'" *Id*.

14. FOIA requires an agency to timely disclose all records responsive to a FOIA request that do not fall within one of nine narrowly construed statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), 552(b)(1)-(9).

15. A FOIA requestor is deemed to have exhausted his or her administrative remedies if the agency fails to comply with the statutory time limits for responding to a request. 5 U.S.C. § 552(a)(6)(C)(i). At that point, the requestor may immediately file suit in federal court to obtain the requested documents. *Kelly v. U.S. Census Bureau*, 540 F. App'x 749, 750 (9th Cir. 2013) *as amended on denial of reh'g* (noting that "person is deemed to exhaust administrative remedies if the agency fails to respond to a request under applicable time limits").

16. A district court has jurisdiction to enjoin the agency from withholding records, to order production of records that are subject to disclosure, and to grant a public interest fee waiver of any costs associated with the production of such records. 5 U.S.C. §§ 552(a)(4)(B), 552(a)(4)(A)(iii).

17. Documents shall be furnished without charge or at a reduced charge if disclosure of the information is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Requests for fee waivers, like that requested by NDLON in its FOIA Request, are to be "liberally construed in favor of waivers for noncommercial requesters." *Env't Prot. Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 947 (9th Cir. 2005) (citations omitted).

18. A requestor may also seek a waiver of search and review fees on the grounds that the requestor is a "representative of the news media" and the records are not sought for a commercial purpose. *See* 5 U.S.C. § 552(a)(4)(A)(ii). A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id*.

19. A FOIA requestor who has been denied records or a waiver of fees associated with the search and production of records may appeal such denials to the

agency. The agency must decide the appeal within twenty business days of receiving it.  5 U.S.C. § 552(a)(6)(A)(ii).

20. FOIA also requires an agency to produce records on an expedited basis, as NDLON has sought with its FOIA Request, when there is a "compelling need" for expedition. 5 U.S.C. § 552(a)(6)(E)(i). A compelling need is established if a person "primarily engaged in disseminating information" shows an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *accord* 28 C.F.R. § 16.5(e)(1)(ii).

21. A FOIA requestor may also be entitled to expedited processing of its Request on the grounds that the records sought relate to a "(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information; (iii) The loss of substantial due process rights; or (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(i), (ii), (iii), (iv).

## FACTUAL AND PROCEDURAL BACKGROUND

### *Role of Immigration Courts in Bond Proceedings*

22. Immigration detention deprives people of their fundamental liberty interests. Bond hearings provide a vital due process mechanism, and are often the only judicial review of one's detention that detained immigrants receive.

23. Immigration Judges ("IJ") preside over bond hearings to determine if an immigrant subject to detention is eligible for release on bond while their immigration removal (deportation) case is pending, and on what terms. 8 U.S.C. § 1226.

24. A bond hearing is a separate proceeding from the main immigration removal case. The primary purpose of a bond hearing is for the IJ to assess whether

an individual poses a danger to the community or is a "flight risk" such that they require detention to ensure they will appear for future court hearings. *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). The burden of proof is on the immigrant to show by clear and convincing evidence that the factors of danger or flight risk are met in order to warrant release on bond. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020).

25. IJs are administrative judges, not constitutional ones, which limits their structural independence. IJs are inferior officers of the United States, supervised by the Attorney General and, in turn, the President. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023). Put simply, they exist solely to "perform such duties as the Attorney General shall prescribe." 8 U.S.C. § 1101(b)(4).

26. The Executive Office for Immigration Review is the agency which houses Immigration Judges. Unlike Article III judges (Supreme, Appellate, District), Immigration Judges lack life tenure and strong protections, making them vulnerable to removal or reassignment, potentially affecting decisional independence. Moreover, unlike Article I Judges (Bankruptcy, Tax, Veterans Claims), Immigration Judges lack fixed terms and removal protections, making them more vulnerable to political pressure and control by the Attorney General.

27. Immigration Judges are employees of EOIR, and are subject to its guidance and policies, including as applicable to bond hearings. 8 C.F.R. § 1003.0(b)(1)(i) (granting EOIR Director power to "[i]ssue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities"), and (e)(1) (establishing an "Office of Policy" within EOIR that operates "[i]n coordination with the Director and subject to the Director's supervision," that "supervise[s] and coordinate[s] EOIR's internal development, dissemination, and implementation of policy guidance"); *see also Duenas*, 78 F.4th at 1073.

28. However, Immigration Judges have an overarching duty to act as impartial adjudicators, both under federal regulations and as a matter of due process. 5 C.F.R. §§ 2635.101(b)(8), (14) (requiring Immigration Judges to "act impartially and not give preferential treatment to any private organization or individual" and to "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards" applicable to individuals employed by the United States Government); *see also Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir.2001); *Matter of Chirinos*, 16 I&N Dec. 276, 277 (BIA 1977). Efforts by EOIR leadership or other members of the Executive to influence IJ decisions would be contrary to these impartiality mandates.

**Surge in Immigrants Detained at Adelanto ICE Processing Center Entitled to Release on Bond**

29. In early June 2025, the Department of Homeland Security (DHS) launched a large scale operation in Los Angeles and surrounding counties, resulting in a surge of largely Latino immigrants being detained at the Adelanto ICE Processing Center.

30. Based on widespread media reports[1], and the government's own data,[2] the vast majority of individuals swept up in these immigration enforcement actions had no criminal history and were likely bond eligible, including because they do not pose a danger or flight risk, have strong community ties, and have pending cases for immigration relief.

---

[1] *See* Human Rights Watch, "US: ICE Abuses in Los Angeles Set Stage for Other Cities," November 4, 2025, at https://www.hrw.org/news/2025/11/04/us-ice-abuses-in-los-angeles-set-stage-for-other-cities#:~:text=Prior%20to%20late%20May%2C%20on,June%206%20Ambiance%20Apparel%20Raids (citing government data); ABC7 Eyewitness New, "Majority arrested by ICE in LA area have no criminal history, data shows," June 26, 2025, at https://abc7.com/post/more-half-arrested-ice-la-area-have-no-criminal-history-data-shows/16850562/#:~:text=So%20who%20exactly%20is%20getting,Press%20contributed%20to%20this%20report.

[2] *Id*.

7

31.     In November 2025, Adelanto Immigration Judges received guidance that if they grant a detained person bond, the judge must write a memo to their superior justifying the reason bond was granted, or they would face repercussions.

32.     Since the issuance of this guidance, the adjudication of bond hearings has changed dramatically at the Adelanto immigration court. The amounts of bonds suddenly increased from lower bond amounts of $5,000 and under, to bonds in the range of $10,000 to $30,000, making it significantly more difficult for people granted bond to be released from detention. Further, an increased number of bond requests have been denied. Plaintiff believes that the change in the adjudication of bond is due to this November 2025 guidance, and seek production of that guidance and communications regarding it, together with IJ bond decisions since June 2025.

## NDLON's Request

33.     On December 5, 2025, NDLON submitted a FOIA request to Defendants seeking recent policies and practices related to issuance of bond decisions by Immigration Judges at the Adelanto, California Immigration Court, as well as IJ bond decisions since June 2025. Exhibit ("Exh.") A attached here. Despite Plaintiff NDLON's request for expedited processing, given the need for transparency into EOIR's policies and practices for issuance of bond, to date Defendants have not produced any records in response to the Request. As Defendants keep these records from the public view, detained people continue to be denied release under dubious circumstances.

34.     The specific records NDLON seek in its Request include the following:

(1)     Any memorandum, directive, or other form of communication issued between November 1, 2025 and December 1, 2025 to immigration judges adjudicating bond redetermination hearings at the Adelanto, California immigration court regarding the issuance of decisions in bond redetermination hearings under INA § 236(a); and

8

(2) All immigration judge custody redetermination orders issued by the Adelanto immigration court pursuant to INA § 236(a) from June 1, 2025 through the time of production (not including those denied for lack of jurisdiction based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)).

35. The Request sought a full fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), or in the alternative, a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that NDLON "is a non-profit organization that intends to disseminate the information gathered by this request to the public at no cost, including through the [NDLON's] websites and social media. The requestor regularly disseminates information to private, government, and nonprofit legal practitioners and members of the public and media through trainings, written advisories, reports, newspapers, blogs, radio programs, resource libraries, and action alerts. [NDLON] may also compile a report or other publication on the government's treatment of immigrants based on information gathered through this FOIA."

36. The Request also sought expedited processing under 28 C.F.R. § 16.5(e)(1), given that the ongoing issue of transparency regarding bond decisions is of "particular importance given the heightened levels of immigration enforcement under the Trump Administration."

## Administrative Exhaustion

37. On December 2, 2025, the same day NDLON submitted its FOIA Request, EOIR acknowledged receipt of the Request and assigned it control number 2026-11650. Exh. B attached here. In that acknowledgement, EOIR did not substantively respond to NDLON's requests for expedited processing or for a fee waiver. It only stated that it would respond to those requests in a separate letter. To date it has not done so as to either the request for expedited processing or for a fee waiver.

9

38. On December 9, 2025, EOIR's Associate General Counsel, Office of General Counsel (FOIA) ("FOIA Counsel") contacted counsel for NDLON by email, stating that it had "begun the search for part 1 of [NDLON's] request," related to EOIR communications with IJs regarding issuance of bond decisions. However, to date, EOIR has not updated NDLON as to the status of that search, let alone produced any responsive records.

39. EOIR's December 9, 2025 email stated as to part 2 of the Request, seeking Adelanto Immigration Judges orders since June 2025, that it could not process the records because the Request "does not reasonably define a set of records to search as required by the FOIA and DOJ regulations. 5 U.S.C. § 522(a)(3); 28 C.F.R. § 16.3(b)." It further stated that because the IJ Orders were "inherently part of the Record of Proceeding," and NDLON's Request "does not request the record of proceeding," "the orders [NDLON] seek[s] could not be identified." EOIR also indicated that the requested IJ "orders would contain personally identifiable information," and NDLON "would be required to provide verification of identity and consent from each respondent to obtain the orders." EOIR concluded by asking NDLON to provide clarification as to these matters within 30 days, absent which EOIR would "administratively close[]" the Request.

40. That same day, counsel for NDLON emailed EOIR's FOIA Counsel to respond to the request for clarification. Counsel for NDLON cited the Second Circuit case *New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 225 (2d Cir. 2021), as authority for EOIR's obligation to produce the unpublished IJ decisions. Counsel for NDLON also clarified that EOIR was free "to redact the names and alien numbers" from the decisions, as NDLON was "asking only for the Immigration judge form bond decisions" and that it does "not require the name or the Alien Number."

41. Between December 10, 2025 and January 5, 2026, EOIR FOIA Counsel and counsel for NDLON exchanged several additional emails to clarify Part 2 of the

Request. In that exchange, EOIR FOIA counsel represented that it could not produce all IJ decisions requested because they "live within the individual ROPs, which could be in a number of different locations," and locating them "would constitute research and record creation, as well as an excessive burden on the agency, all of which is not required under the FOIA." As an alternative, EOIR FOIA Counsel offered to produce 25 IJ decisions attached to "BIA decisions accessible … in the BIA decisions portal," from which it would redact names and A numbers.

42. In response, counsel for NDLON represented that that it would not agree to EOIR's production of only 25 IJ bond decisions attached to BIA decisions, but did agree to production of only those IJ bond decision contained in the electronic "ECAS" database. However, EOIR FOIA Counsel rejected this compromise, stating that it "would still have to conduct research and run a statistical report."

43. On January 5, 2026, counsel for NDLON asked for a status update regarding the search for and production of records responsive to Part 1 of the Request for EOIR communications regarding bond determinations. EOIR counsel responded that day that she had no further updates.

44. Also on January 5, 2026, counsel for NDLON informed EOIR FOIA Counsel that it would not agree to the limited IJ decisions attached to BIA decisions, such that it would need to move forward with litigation.

45. To date, EOIR has not produced any records responsive to either Parts 1 or 2 of NDLON's FOIA Request.

## CLAIMS FOR RELIEF

### First Claim

### Violation of FOIA, 5 U.S.C. § 552

### Wrongful Withholding of Non-Exempt Responsive Records

### (All Defendants)

46. NDLON properly requested records within the possession, custody, and control of Defendants.

47. Defendants are agencies and components thereof subject to FOIA, and they must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

48. Defendants are wrongfully withholding non-exempt agency records requested by NDLON by failing to produce non-exempt records responsive to its FOIA requests, including on an expedited basis to which NDLON is entitled.

49. Defendants are wrongfully withholding non-exempt agency records requested by NDLON by failing to segregate exempt information in otherwise non-exempt records responsive to the Request.

50. Defendants' failure to timely provide all non-exempt responsive records violates FOIA and applicable regulations.

51. Because Defendants failed to comply with the applicable time-limit provisions of FOIA, NDLON has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

52. NDLON is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## Second Claim
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records
### (All Defendants)

53. NDLON properly requested records within the possession, custody, and control of Defendants.

54. Defendants are agencies subject to and within the meaning of FOIA, and they must therefore make reasonable efforts to search for requested records.

55. Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to the Request.

56. Defendants' failure to conduct adequate searches for responsive records violates FOIA and applicable regulations.

57. Because Defendants failed to comply with the applicable time-limit provisions of FOIA, NDLON has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

58. The NDLON is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to the Request.

## **PRAYER FOR RELIEF**

59. WHEREFORE, NDLON respectfully requests the Court to:
    (a) Declare unlawful the Defendants' failure to comply with FOIA;
    (b) Declare that NDLON is entitled to disclosure of the requested records, including on an expedited basis;
    (c) Order Defendants to immediately process the Request and to disclose, in their entirety, unredacted versions of all records responsive to the Request that are not specifically exempt from disclosure under FOIA, including any non-identical copies of any such records;
    (d) Enjoin Defendants from charging NDLON search, review, or duplication fees of the processing of the requests;
    (e) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to the Request;
    (f) Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;
    (g) Award NDLON its reasonable attorney's fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(h) Grant preliminary and such other relief as the Court may deem just and proper.

Date: January 13, 2026                    Respectfully submitted,

HOQ LAW APC

/s/ Laboni A. Hoq*
Laboni A. Hoq

LAW OFFICES OF STACY TOLCHIN

/s/ Stacy Tolchin
Stacy Tolchin

* Filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing

14